48 715
55 625

FREDERICK H. MILLER, APPELLEE, V. GABRIEL GUN-
DERSON ET AL., APPELLANTS.

FILED JUNE 2, 1896.   No. 6637.

1. **Negotiable Instruments**: ADMISSION OF EXECUTION.  Evidence con-
tradictory of the terms of a promissory note cannot furnish a de-
fense to such note when it is admitted by defendants that such
note was duly executed by them.

2. **Mortgages**: CANCELLATION: TENDER.  A mortgage will not be can-
celed upon the application of the mortgagor, no creditor being
interested, without a tender or requirement that the mortgagee
be reimbursed for such expenditures as he has made, and indem-
nified as to such liabilities as in good faith he has incurred, on the
faith of such mortgage.

APPEAL from the district court of Douglas county.
Heard below before WALTON, J.

*B. G. Burbank,* for appellants:

Partnership property, with the consent of all the part-
ners, may be mortgaged to secure the individual debts of
one or more of the partners. (*Richards v. Leveille,* 44 Neb.,
38; *Roop v. Herron,* 15 Neb., 73; *Deitrich v. Hutchinson,*
20 Neb., 52; *Sylvester v. Henrich,* 61 N. W. Rep. [Ia.], 945;
*Fisher v. Syfers,* 10 N. E. Rep. [Ind.], 306; *In re Kahley,*
2 Biss. [U. S. C. C.], 383; *Smith v. Smith,* 54 N. W. Rep.
[Ia.], 73; *National Bank of Metropolis v. Sprague,* 20 N. J.
Eq., 13; *Carver Gin & Machine Co. v. Bannon,* 85 Tenn., 718;
*Case v. Beauregard,* 99 U. S., 119; *Huiskamp v. Moline
Wagon Co.,* 121 U. S., 310; *Veal v. Keely Co.,* 86 Ga., 130;
*Kennedy v. National Union Bank,* 23 Hun [N. Y.], 491;
*Wiggins v. Blackshear,* 26 S. W. Rep. [Tex.], 939.)

*John L. Carr, David W. Merrow,* and *Isaac E. Congdon,*
contra.

RYAN, C.

About the first day of January, 1888, Frederick H.
Miller entered into partnership with Gabriel M. Gunder-

son for the purpose of carrying on the planing mill business in the city of Omaha. It was stipulated between the partners that the first named contributed $20,000 and the last named $15,000. It was also provided that eight per cent interest was to be allowed on any excess of capital which one partner might have, and that this interest was to be paid, with other expenses, from the business of the firm, before a division of profits. In the latter part of the year 1887 Gabriel Gunderson, the father of Gabriel M. Gunderson, had been asked by Frederick H. Miller to furnish money for the operation of a planing mill, which Miller had constructed, but had not means enough to operate. Mr. Miller's arrangement, as he claims, was to take Gabriel M. Gunderson into partnership with him, the father to furnish the amount of money necessary to enable Gabriel M. Gunderson, his son, to become such partner. The Gundersons insist that the advances made by the elder Gunderson were loans to the firm of Miller & Gunderson. This is the first matter of dispute between the litigants. Whatever this arrangement was, there is one thing certain, and that is that under it Gabriel Gunderson furnished $7,500 on January 17, 1888; $5,000 on April 24, 1888; $900 on May 17, 1888; and at some time prior to the last named date, $60.80,—making a total of $13,460.80. It seems that the first item of $7,500 was credited by Gabriel M. Gunderson upon the books of the firm of Miller & Gunderson as a payment on account for the capital advanced by himself as the junior member. There was no evidence that Gabriel Gunderson knew anything of this entry. When he sent the draft for $7,500 from Chicago, his place of residence, he inclosed three promissory notes, each of $2,500, to be signed by Gabriel M. Gunderson, Frederick H. Miller, and the wife of Miller. These notes were accordingly executed. Gabriel Gunderson explained in his testimony that he supposed this was the proper way for these notes to be given, though they were for the indebtedness of the firm of Miller & Gunderson. This firm, from its commencement, instead

of making money ran into debt, until on January 13, 1893, in a letter written by Frederick H. Miller to Gabriel Gunderson in Chicago, the situation was stated in this language: "I suppose you know that the mill is in the hands of the sheriff, and I do not see how the matter can be continued much longer, as about all the outstanding accounts are collected that can be at present, except a few hundred dollars. The judgments against us in the sheriff's office amount to about three thousand dollars, and more to hear from. There not being any prospect of fixing up the matter, think it would be best for all concerned for you to be here." Upon receipt of this letter Gabriel Gunderson went to Omaha. On January 19, 1893, the firm of Miller & Gunderson, by F. H. Miller, as partner, and F. H. Miller and Gabriel M. Gunderson, individually, joined in making a chattel mortgage upon the personal property of said firm to secure its five promissory notes to Gabriel Gunderson, payable on demand, of which notes each of three was for $3,270.10, another was for $6,780.51, and still another was for $5,000. At the same time F. H. Miller and Gabriel M. Gunderson, the joint owners of the planing mill real property, their wives joining, made a mortgage on said real property to secure payment of the notes above described, except the $5,000 note, to be hereafter explained. These notes represented advances and interest. These mortgages were duly filed for record on the day following their date. Soon afterward Gabriel Gunderson commenced proceedings for their foreclosure.

The petition in this case was filed by F. H. Miller as a quondam member of the firm of Miller & Gunderson. His former partner and the mortgagee were joined as defendants. The plaintiff in this petition described the various transactions in which he had taken part, in accordance with the theory that Gabriel Gunderson had made advances solely to enable his son to become a partner and to continue that relationship between the son and the plaintiff. It was averred that Gabriel Gunderson, in

the encouragement of the formation of a partnership between his son and plaintiff, was conniving and conspiring with said son to defraud plaintiff, and that the subsequent transactions were carried on in pursuance of the same fraudulent common purpose of the father and son to deprive plaintiff of his property and to defraud the creditors of said firm, and that the proposed foreclosure of the mortgages would consummate these designs of the defendants. It will greatly simplify this investigation to say, once for all, that plaintiff's counsel, in their brief, expressly state that in this litigation the rights of creditors are not involved. The prayer of the petition was that the mortgages be declared fraudulent, inoperative, and void; that they be canceled; that the advertised foreclosure of the chattel mortgage be enjoined; that any proceedings by defendants under said mortgages be restrained until the controversy herein has been determined by the court, and for such other and further relief as in equity and good conscience the plaintiff might be entitled to. The answer and reply raised the issues hereinbefore indicated. Upon a trial of these issues there was a decree in accordance with the prayer of the petition, on findings that Gabriel Gunderson, the defendant, obtained the mortgages from plaintiff by and through his own and his son's fraud and misrepresentation, as alleged in the petition, that is to say, that said Gabriel Gunderson would, if said mortgages were given him, pay all the debts of the firm of Miller & Gunderson, which he had not done and had never intended, but had always refused to do, and furthermore, that the money advanced by Gabriel M. Gunderson as his part of the capital of the firm was loaned to him by his father for that purpose; that the notes to Gabriel Gunderson never represented any indebtedness of the firm of Miller & Gunderson; that as between the plaintiff and the defendants there was never any consideration for said notes, and that the plaintiff was not liable on said notes.

It would be a tedious as well as fruitless task to re-

capitulate the evidence upon consideration of which the district court reached the above results. In respect to the proposition that Gabriel Gunderson obtained the mortgages by the representation that he would pay all the debts of the firm, it is deemed proper to say that it was shown that the First National Bank of Omaha, before the commencement of this action, had brought suit against Gabriel Gunderson upon this alleged promise to pay the debts of Miller & Gunderson to the amount of over $8,000. It is also shown by the evidence that after said mortgages had been made to him, Gabriel Gunderson had paid over $3,000 of the indebtedness of said firm on the faith of said mortgages. This defendant denied that he assumed the debt to the bank, but admitted that the above described note for $5,000 was one given to him to cover certain debts which he has in fact paid to said amount of over $3,000, and explained that the payment of these particular debts was necessary to obtain possession of the personal property mortgaged. Now, whether the theory of plaintiff is adopted, that is, that Gabriel Gunderson was to pay all the debts of the firm, including that to the bank, or whether, as the mortgagee claims, he was to pay only certain specified debts, is not very material in principle, for, in any event, it is clear that Gabriel Gunderson has advanced for the firm over $3,000 on the faith of these mortgages. To avoid the effect of this suggestion it is urged that while the mortgagee paid these debts, he took an assignment of the evidences thereof, which he still holds. There will be no difficulty in defeating any attempted enforcement of these claims against the firm, whenever, either by the foreclosure of the mortgages or otherwise, these debts shall have been paid by the firm aforesaid. We cannot understand why Mr. Gunderson should be deprived of his mortgage security without a tender or requirement of indemnifying him against any alleged personal liability incurred solely on the faith of said mortgages. As to the findings that these notes never represented an indebtedness of Miller

& Gunderson, but were given for advances made by the father to the son, it may be remarked, in the first place, that this conclusion was reached upon evidence of statements preceding the execution of these notes and in direct contradiction of their terms.   In the second place, even if by competent evidence it could be shown that the undertakings of the signers were not what they were evidenced by the notes as being, nevertheless, the giving of a note and mortgage by a firm to secure payment of the debt of one of its individual members, when not violative of the rights of a creditor of the firm, has often been upheld as resting upon a sufficient consideration.   Upon this point counsel for the appellants has cited many authorities which sustain this proposition.   As these will appear properly accredited to such counsel, it is deemed inadvisable to reproduce them.

The judgment of the district court is reversed and this action is dismissed at the costs of the appellee.

REVERSED AND DISMISSED.